UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAMIRO LUCERO LOPEZ,

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, *et al.*,

Respondents.

Case No. 1:26-cv-03402-KES-CDB (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS

(A-Number: 090-805-822)

(Doc. 1)

**7-Day Objection Period**

Petitioner Ramiro Lucero Lopez, a federal immigration detainee proceeding pro se and *in forma pauperis*, initiated this action on May 4, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a motion for temporary restraining order ("TRO"). (Docs. 1, 4). Petitioner is in custody of Immigration and Customs Enforcement ("ICE") at the California City Detention Facility. (Doc. 1 ¶ 1).

On July 20, 2026, the Court denied Petitioner's TRO motion, finding at that time that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) due to his 2004 conviction for making criminal threats. (Doc. 10). The Court found that because Petitioner was detained at the border while re-entering the country on March 11, 2026, he has not shown that he is likely to succeed on his due process claim. *Id.* The Court noted that although Petitioner's TRO motion did not raise a due process challenge based on the length of his detention, he is not foreclosed from raising such a challenge if his detention becomes prolonged. *Id.* The Court referred the matter to

the undersigned for further proceedings, including the preparation of findings and recommendations on the petition. *Id.* At the Court's direction (Doc. 11), Respondents filed a statement of intent to file no further briefing on the petition on July 30, 2026. (Doc. 12).

## I. Relevant Background

Petitioner is a native and citizen of Mexico who received lawful permanent residency ("LPR") status in the United States in December 1990. (Doc. 9 at 1); *see* (Doc. 9-1 at 1-2) (March 11, 2026, Form I-213 Record of Deportable/Inadmissible Alien). While still maintaining LPR status, on March 10, 2026, Petitioner returned to the United States following a trip outside the country and was found deemed by immigration authorities inadmissible based on his October 2004 felony conviction for threats to commit crime with intent to terrorize under California Penal Code section 422, a crime involving moral turpitude ("CIMT"), for which Petitioner was sentenced to 105 days in jail and 36 months of probation. (Doc. 9-1 at 3, 4). Petitioner was issued a Notice to Appear and placed in removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). *Id.* at 4. Petitioner's Form I-213 documents that Petitioner was advised that his LPR card (I-551) will be retained in his A-file pending resolution of removal proceedings. *Id.* at 3. Petitioner acknowledges in his petition his October 2004 conviction under section 422. (Doc. 1 ¶ 23).

The Court takes judicial notice that Petitioner's immigration case was terminated on August 3, 2026, with no future hearings scheduled and that any appeal to the Board of Immigration Appeals ("BIA") is due by September 2, 2026.[1]

## II. Governing Authority

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Aug. 25, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co*., 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

Here, Respondents do not challenge this Court's jurisdiction to adjudicate the petition (*see generally* Doc. 9) and under the authorities cited above, the Court finds it properly may exercise jurisdiction over the merits of the petition.

## III. <u>Discussion</u>

Petitioner asserts one cause of action his petition for violation of procedural due process under the Fifth Amendment to the U.S. Constitution based on his prolonged detention. (Doc. 1 at 16-17).

### A. Section 1226(c)

The undersigned adopts and applies the governing legal regime applicable to Petitioner's detention pursuant to 8 U.S.C. § 1226(c). *See Kakkar v. Chestnut*, No. 1:25-cv-1627 JLT SAB, 2025 WL 3638298, at *3-5 (E.D. Cal. Dec. 15, 2025) (discussing section 1226(c)'s mandatory detention regime and noting it does not foreclose as-applied constitutional challenges under *Nielsen v. Preap*, 586 U.S. 392 (2019)).

The Ninth Circuit has "held that a conviction under section 422 of the California Penal Code is categorically a [crime involving moral turpitude]." *See Zaragoza Rios v. Blanche*, No. 23-801, 2026 WL 2364545, at *1 (9th Cir. Aug. 14, 2026) (citing *Latter-Singh v. Holder*, 668 F.3d 1156, 1163 (9th Cir. 2012)). Thus, Petitioner's conviction under section 422 is a crime involving moral turpitude under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *See Latter-Singh*, 668 F.3d at 1163.

The Court next considers whether Petitioner falls under the "petty offense exception." "Under the exception, § 1182(a)(2)(A)(i)(I) 'shall not apply' if (1) the alien 'committed only one

crime,' (2) 'the maximum penalty possible for the [predicate CIMT] … did not exceed imprisonment for one year,' and (3) 'if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months.'" *Cervantes v. Holder*, 772 F.3d 583, 587 (9th Cir. 2014) (alteration in original; quoting 8 U.S.C. § 1182(a)(2)(A)(ii)(II)).

Here, the first element of the petty offense exception is met. Respondents identify only one crime involving moral turpitude, namely Petitioner's October 2004 felony conviction under section 422. *See Ballinas-Lucero v. Garland*, 44 F.4th 1169, 1173 (9th Cir. 2022) ("[A] noncitizen with only one conviction for a CIMT crime is not inadmissible if the crime qualifies under the 'petty offense exception.'") (citing *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159 (9th Cir. 2009)). Petitioner does not qualify for the petty offense exception under § 1182(a)(2)(A)(ii) because, whereas a misdemeanor conviction under section 422 carries a maximum term of imprison of one year, the maximum sentence for Petitioner's felony conviction under section 422 is greater than one year. *See* Cal. Penal Code § 422(a) ("imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."); *see id.* § 1170(h) (providing punishment for up to three years of imprisonment for felony convictions).

Moreover, Respondents correctly argue that the conviction remains operative for immigration detention purposes notwithstanding Petitioner obtained conviction relief under California Penal Code section 1203.425. *See* (Doc. 9-1 at 13); Cal. Penal Code § 1203.425 (providing for automatic conviction relief for eligible persons). As a general rule, the Ninth Circuit has held that "an expunged conviction qualifies as a conviction under the INA" and that "a person continues to stand convicted of an offense notwithstanding a later expungement under a state's rehabilitative law." *Ramirez-Castro v. INA*, 287 F.3d 1172, 1174 (9th Cir. 2002) (citing *Murillo–Espinoza v. INS*, 261 F.3d 771, 774 (9th Cir. 2001)); *see id.* at 1175 (finding California expungement relief under Cal. Penal Code § 1203.4 "does not eliminate all consequences of a conviction even under California law" such that "a conviction expunged under that provision remains a conviction for purposes of federal law."); *see Poblete Mendoza v. Holder*, 606 F.3d 1137, 1141 (9th Cir. 2010) ("A conviction vacated for reasons 'unrelated to the merits of the underlying criminal proceedings' may be used as a conviction in removal proceedings whereas a conviction

vacated because of a procedural or substantive defect in the criminal proceedings may not.") (quoting *Nath v. Gonzales*, 467 F.3d 1185, 1189 (9th Cir. 2006)); *Prado v. Barr*, 949 F.3d 438, 441 (9th Cir. 2020) ("[F]ederal immigration law does not recognize a state's policy decision to expunge (or recall or reclassify) a valid state conviction.").

Accordingly, the petty offense exception does not apply and Petitioner remains subject to mandatory detention under 8 U.S.C. § 1226(c) due to his qualifying CIMT conviction. *See, e.g.*, *Alba-Perez v. Warden, Mesa Verde Det. Facility*, No. 1:26-cv-03137 DJC SCR, 2026 WL 1651042, at *3 (E.D. Cal. June 8, 2026), *report and recommendation adopted*, No. 1:26-cv-03137 DJC SCR, 2026 WL 2044253 (E.D. Cal. July 15, 2026). Indeed, Petitioner does not appear to dispute that § 1226(c) governs his detention. *See* (Doc. 1 ¶¶ 21, 26). Because the Petitioner is subject to mandatory detention under § 1226(c) based on this conviction, Petitioner is subject to § 1226(c)(4)'s release provision and therefore is not entitled to bond hearings in the same fashion as those detained under § 1226(a). *See Kakkar*, 2025 WL 3638298, at *4.

Notwithstanding the undersigned's finding that Petitioner is subject to mandatory detention under § 1226(c), here, Petitioner raises a due process argument that his "ongoing prolonged detention without a [bond] hearing violates due process." (Doc. 1 at 16). As noted above, the Supreme Court's holding in *Preap* "does not foreclose as-applied challenges … to applications of [§ 1226(c)]." *Preap*, 586 U.S. at 420; *Kakkar*, 2025 WL 3638298 at *5.

Therefore, the undersigned considers Petitioner's as-applied challenge to his detention raised in his due process claim.

**B. Procedural Due Process**

On Petitioner's as-applied procedural due process challenge to his continuing detention by immigration authorities, the undersigned considers (1) "whether there exists a protected liberty interest under the Due Process Clause, and … [(2)] the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

"There is … a meaningful distinction between a challenge to an initial period of

detention, … and a challenge to *re-detention* after a court has previously granted release on bond pending immigration proceedings." *Carballo v. Andrews*, No. 1:25-cv-00978-KES-EPG, at 2025 WL 2381464, at *7 (E.D. Cal. Aug. 15, 2025) (emphasis in original). "'[T]he liberty interests of [an individual] who is re-arrested differ from the liberty interests of a detained person.'" *Id.* (*quoting Guillermo M.R. v. Kaiser*, No. 25-cv-05436-RFL, 2025 WL 1810076, at *1 (N.D. Cal. June 30, 2025)). "In the former situation, where ICE detains an individual upon their release from a correctional facility, without any substantial intervening period of release, that individual has no opportunity 'to form the [] enduring attachments of normal life.'" *Id.* (*quoting Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, after Petitioner first entered the United States, he was granted LPR status on December 1, 1990. *See* (Doc. 9-1 at 2). Petitioner lawfully remained in the United States for a significant amount of time—over 35 years from the time he was granted LPR status—during which time he raised nine U.S. citizen children and was gainfully employed. *See* (Doc. 1 ¶ 23). The undersigned notes Petitioner has alleged, and Respondents do not refute (*see* Doc. 9), that Petitioner renewed his LPR status on three separate occasions in 2003, 2014, and 2023, despite the government being "fully aware or presumably aware" of his 2004 arrest and conviction for the section 422 offense. (Doc. 1 ¶ 23). Respondents' decision not to detain or proceed with removal proceedings against Petitioner until he returned from a trip outside of the United States constitutes a tacit decision to permit Petitioner's release from immigration custody and acceptance that he was not a flight risk nor a danger to the community. Indeed, Respondents do not assert that Petitioner was subject to any conditions of release, nor do they proffer facts permitting the drawing of any reasonable inference that Petitioner is a danger to the public or a flight risk. (Doc. 9); *see, e.g., Kakkar*, 2025 WL 3638298, at *5-6; accord *Carballo*, 2025 WL 2381464, at *6 (agreeing with other courts that "found that the petitioners possessed a protected liberty interest arising from their several years of post-conviction freedom[.]").

Put simply, Petitioner was released from state custody following service of his jail sentence and was arrested years later by ICE and detained pending removal proceedings when he returned from a trip outside of the United States. Given Petitioner's LPR status and ability therewith to form

"enduring attachments of normal life" (*Morrissey*, 408 U.S. at 482), Petitioner plainly maintains the general liberty interest to be free from detention that the Supreme Court recognized in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). *See Kakkar*, 2025 WL 3638298, at *5 (discussing, *inter alia*, *Perera*, which "involv[ed] a legal permanent resident, convicted of possession with intent to distribute controlled substances, released from prison in 2015, and detained by ICE for the first time in April 2021" but "successfully reintegrated into their communities for several years before being detained pursuant to § 1226(c)" and succeeded in "raising [an] as-applied due process challenge[] to [his] detention without a bond hearing[.]").

The undersigned acknowledges that any such general liberty interest Plaintiff may assert in freedom from detention must be considered in light of the fact that Petitioner presumably has an opportunity to challenge his inclusion in a mandatory detention category pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), but here, it does not appear from the record that he has pursued that avenue of relief.[2] *Rivas Amaya v. Warden*, No. 1:26-cv-00884-DJC-SCR, 2026 WL 1651019, at *3 (E.D. Cal. June 8, 2026). Further, Petitioner has been detained in immigration custody without a custody determination hearing since he was apprehended by immigration authorities on March 10, 2026— which is rapidly approaching the outer limit of the six-month period deemed by the Supreme Court to be "presumptively reasonable" in the immigration context. *Zadvydas*, 533 U.S. at 701. The undersigned also notes that because Petitioner's removal proceedings were terminated on August 3, 2026, pending any appeal of that decision, it appears that Petitioner's detention under § 1226(c) may terminate upon the conclusion of any appellate proceedings. *See Jennings*, 583 U.S. at 304 ("[D]etention under 1226(c) has a definite termination point: the conclusion of removal proceedings."). Therefore, Petitioner's mandatory detention under § §1226(c) appears presumptively reasonable and will terminate upon the conclusion of any

[2] The remedy in a *Joseph* Hearing is a finding that a noncitizen is not subject to mandatory detention under § 1226(c). *See Joseph*, 22 I&N Dec. 799 at 804. Petitioner, however, does not challenge his detention under § 1226(c); instead, he asserts that his prolonged detention violates his right to procedural due process under the Fifth Amendment to the U.S. Constitution. *See* (Doc. 1 at 16). Therefore, because a *Joseph* Hearing would not provide Petitioner with the relief he seeks through his petition, the undersigned finds that Petitioner was not required to exhaust his administrative remedies by pursuing a *Joseph* Hearing before filing the instant petition.

appellate proceedings related to the termination of his removal proceedings. *E.g., Perez-Cortez v. Mayorkas*, No. 2:21-cv-00982-CDS-DJA, 2022 WL 1431833, at *3 (D. Nev. May 4, 2022) ("[D]etention under 1226(c) is mandatory, and [petitioner] is not being detained indefinitely.").

Although Petitioner's liberty interest appears diminished given the above considerations, the undersigned notes that Petitioner has not been afforded a custody redetermination since the time he was detained in March 2026. Where a noncitizen has been detained under section 1226(c) for a prolonged period without an individualized bond hearing, judges of this Court have considered whether such detention has become unreasonably prolonged such that due process requires a bond hearing under *Mathews*. *See, e.g., Escobar-Contreras v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-00430-KES-SAB-HC, 2026 WL 948390, at *5-6 (E.D. Cal. Apr. 8, 2026); *Lopez v. Warden of California City Detention Facility*, No. 1:26-cv-01525 CSK, 2026 WL 834573, at *4 (E.D. Cal. Mar. 26, 2026); *Hernandez v. Warden of the Golden State Annex Detention Facility*, No. 1:25-cv-01772-SAB-HC, 2026 WL 453517, at *4-5 (E.D. Cal. May 11, 2026).

While Petitioner's detention without a bond hearing (approxiately six months) appears presumptively reasonable in length, in light of Petitioner's protected liberty interest to be free from detention based on his release from state custody for approximately 21 years without incident, the undersigned considers what process is due before the government may terminate that interest based on the following factors articulated in *Mathews*: "[(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez v. Sessions*, 872 F.3d 976, 993-94 (9th Cir. 2017) (applying *Mathews* test in immigration detention context); *id.* at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has a significant private interest in release from custody.

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). While the undersigned "cannot simply count his months of detention and leave it at that[,]" (*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)), the undersigned "must also consider the process he received during this time, the further process that was available to him, and the fact that his detention [may become] prolonged due to [the government's] decision to challenge" the immigration judge's termination of Petitioner's removal proceedings. *Id.* Here, Petitioner—a lawful permanent resident—had been released from state custody for approximately 21 years without incident prior to his immigration detention. He alleges that he has lived in the country for over four decades supporting his family of nine U.S. citizen children and has obtained renewals of his LPR status on three occasions. Respondents do not assert or otherwise show that Petitioner was subject to any conditions of supervision of which he has violated or committed any additional crimes while on release. Although the record does not indicate whether Petitioner ever pursued a *Joseph* Hearing to challenge his detention under § 1226(c), because Petitioner's continued liberty interest in remaining on release is undermined by his immigration detention without a bond hearing, the undersigned finds that the first *Mathews* factor weighs in Petitioner's favor. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("Freedom from imprisonment is at the core of the Due Process Clause…. The lengthy duration of his conditional release as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the undersigned finds that the risk of erroneous deprivation is considerable where Petitioner has not received any bond or custody determination hearing. *See, e.g., A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. 2020). "Thus, the probable value of additional procedural safeguards—a bond hearing—is high, because Respondents have provided virtually no procedural safeguards at all." *Id.* Therefore, this factor

weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5.

Third, the undersigned recognizes that the government has a clear interest in detaining Petitioner to "'protect[] the public from dangerous criminal aliens.'" *Rodriguez Diaz*, 53 F.4th at 1208 ("The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal."). However, the government's interest in detaining Petitioner without a bond hearing is "low." *Doe*, 787 F. Supp. 3d at 1094; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."); *see Carballo*, 2025 WL 2381464, at *8 ("The government has thus far not argued or identified any new factual circumstances in the past five years that would affect such a determination."); *Kakkar*, 2025 WL 3638298, at *7 ("The government may have a significant interest in protecting the public from dangerous criminal aliens. However, such argument is undermined somewhat by the fact that Respondents waited four years to arrest the Petitioner and have not identified changed circumstances that now justify his arrest."). Custody determination hearings in immigration courts are routine and impose a "minimal cost." *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing.

On balance, the undersigned finds that under *Mathews*, Respondents have violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution through his arrest in March 2026 and continuous and continuing detention thereafter.

**C. Remedy**

Respondents do not assert that Petitioner is a flight risk or a danger to the community, do not show whether Petitioner is subject to any conditions of supervised release, and have not

identified any material changed circumstances since Petitioner was released from state custody following service of his sentence from his October 2024 conviction. Accordingly, the undersigned finds and will recommend that Respondents be ordered to afford a bond hearing to Petitioner consistent with the holdings in the decisions noted above. *E.g.*, *Kakkar*, 2025 WL 3638298, at *6-7. Accord *Prior v. Andrews*, No. 1:25-cv-01131-JLT-EPG (HC), 2026 WL 698801, at *2 (E.D. Cal. Mar. 12, 2026) (adopting in part findings and recommendations to grant petition for writ of habeas corpus but declining to order the petitioner's immediate release). Immediate release is not warranted because immigration authorities never previously detained and released Petitioner on any finding that he was neither a flight risk nor danger to the community.

Further, the undersigned will recommend the government bear the burden at a bond hearing of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight or that there is a material change in his removal situation that would justify his detention. *E.g., Carballo*, 2025 WL 2381464, at *9; *Kakkar*, 2025 WL 3638298, at *6.

## IV. <u>Conclusion and Recommendation</u>

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.
2. Respondents be ORDERED to hold a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations within 14 days, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community or that there is a material change in his removal situation such that physical custody is legally justified.[3]
3. Respondents be DIRECTED to file a status report certifying compliance with the order

---

[3] The undersigned also recommends the following:

If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here, SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondents SHALL provide a bond hearing in the timeframe required by law.

within five (5) days of the bond hearing.

4. The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require."). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **August 26, 2026**

UNITED STATES MAGISTRATE JUDGE